# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| UPH HOLDINGS, INC. | § | CASE NO. 13-10570 |
| PAC-WEST TELECOMM, INC. | § | CASE NO. 13-10571 |
| TEX-LINK COMMUNICATIONS, INC. | § | CASE NO. 13-10572 |
| UNIPOINT HOLDINGS, INC. | § | CASE NO. 13-10573 |
| UNIPOINT ENHANCED SERVICES, INC. | § | CASE NO. 13-10574 |
| UNIPOINT SERVICES, INC. | § | CASE NO. 13-10575 |
| NWIRE, LLC | § | CASE NO. 13-10576 |
| PEERING PARTNERS | § | CASE NO. 13-10577 |
| COMMUNICATIONS, LLC | § | |
| | § | |
| DEBTORS. | § | CHAPTER 11 |
| | § | |
| EIN: 45-1144038; 68-0383568; 74-2729541; | § | |
| 20-3399903; 74-3023729; 38-3659257; 37- | § | |
| 1441383; 27-2200110; 27-4254637 | § | |
| | § | |
| 6500 RIVER PL. BLVD., BLDG. 2, # 200 | § | JOINTLY ADMINISTERED |
| AUSTIN, TEXAS 78730 | § | UNDER CASE NO. 13-10570-TMD |
| | § | |
| UPH HOLDINGS, INC. | § | |
| PAC-WEST TELECOMM, INC. | § | |
| TEX-LINK COMMUNICATIONS, INC. | § | |
| UNIPOINT HOLDINGS, INC. | § | |
| UNIPOINT ENHANCED SERVICES, INC. | § | |
| UNIPOINT SERVICES, INC. | § | |
| NWIRE, LLC | § | |
| PEERING PARTNERS | § | |
| COMMUNICATIONS, LLC | § | |
| | § | ADV. PRO. NO. _____ |
| PLAINTIFFS, | § | |
| | § | |
| V. | § | |
| | § | |
| LEAP WIRELESS INTERNATIONAL, | § | |
| INC. D/B/A LEAP WIRELESS INTL, INC. | § | |
| D/B/A CRICKET COMM., INC., | § | |
| | § | |
| DEFENDANT. | § | |

## PLAINTIFFS' COMPLAINT FOR TURNOVER

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE TONY M. DAVIS:

COMES NOW UPH Holdings, Inc., ("UPH"), Pac-West Telecomm, Inc., ("Pac-West"), Tex-Link Communications, Inc. ("Tex-Link") UniPoint Holdings, Inc. ("UniPoint Holdings"), UniPoint Enhanced Services, Inc. ("UniPoint Enhanced Services"), UniPoint Services, Inc., ("UniPoint Services"), nWire, LLC ("nWire"), and Peering Partners Communications, LLC ("Peering Partners") (collectively the "Debtors" and/or "Plaintiffs"), and pursuant to 11 U.S.C. § 542 (the "Bankruptcy Code") and Rule 7001(1) of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules"), hereby files their Complaint against Leap Wireless International, Inc. d/b/a Leap Wireless Intl, Inc. d/b/a Cricket Comm., Inc. for turnover of property.

## I. JURISDICTION

1. This is an adversary proceeding brought by the Debtors as Plaintiffs, pursuant to Bankruptcy Rule 7001(1) and 11 U.S.C. § 542(b). This Court has jurisdiction over the subject matter of this action under 28 U.S.C. § 157 and § 1334 in that this is a core proceeding arising under title 11 of the United States Code (the "Bankruptcy Code") or arising in or related to a case under the Bankruptcy Code.

## II. FACTUAL BACKGROUND

2. On March 25, 2013 ("Petition Date"), the Debtors filed their voluntary petitions for relief under Chapter 11 of the United States Bankruptcy Code, 11 U.S.C. § 101, et. seq. (as amended, the "Bankruptcy Code"). The Debtors continue to operate as debtors-in-possession pursuant to §§ 1107(a) and 1108 of the Bankruptcy Code.

3. The Debtors are a group of affiliated entities that provide telecommunication services in a variety of contexts including voice over Internet protocol ("VoIP"), local exchange and enhanced telecommunications, and data services.

4. The Debtor Pac-West Telecomm, Inc. ("Pac-West") is owed intercarrier compensation ("Intercarrier Compensation") from Leap Wireless International, Inc. d/b/a Leap Wireless INTL, Inc. d/b/a Cricket Comm., Inc. ("Defendant") in the amount of at least $10,078,214.69. In line with its business practices, the Debtor Pac-West issued invoices to the Defendant on account of the services provided by the Debtor.[1] Despite demand, the Defendant has refused to pay the amounts due and payable to the Debtor Pac-West. In addition, under the doctrine of account stated, the Defendant has never objected to the invoices issued by the Debtor-Pac West to it; such failure to object to those invoices nullifies any argument by the Defendant concerning the invoices. Consequently, consistent with § 542(b), the Defendant must remit payment of the $10,078,214.69 immediately to the Debtors.

### III. PARTIES

5. The Plaintiffs may be served in this adversary proceeding through the undersigned counsel.

6. Leap Wireless International, Inc. d/b/a Leap Wireless INTL, Inc. d/b/a Cricket Comm., Inc. (herein "Defendant") may be served by delivering a copy of the summons and the complaint to its agent for service, The Prentice-Hall Corporation System at 2711 Centerville Road, Suite 400, Wilmington, DE 19808, or pursuant to Federal Rule of Civil Procedure 4(h) by serving any director, officer or agent authorized by law to accept service.

### IV. COUNT I: TURNOVER UNDER 11 U.S.C. § 542(B)

7. The Debtors incorporate all preceding paragraphs as if fully re-alleged herein. The Debtors seek a total of at least $10,078,214.69 from the Defendant. Despite demand, the Defendant has failed and refused to pay this sum for which it has received intercarrier services from the Debtor.

---

[1] Copies of the first pages of representative invoices relating to the debt owed by the Defendant to the Debtors are attached hereto as Exhibit "A." Full copies of the invoices are available upon request.

8. Importantly, section § 542(b) of the Bankruptcy Code provides, in pertinent part, as follows:

> [A]n entity that owes a debt that is property of the estate and that is matured, payable on demand, or payable on order, shall pay such debt to, or on the order of, the trustee, except to the extent that such debt may be offset under section 553 of this title against a claim against the debtor.

Pursuant to § 542, the Debtors seek an order that the Defendant remit the amount owed to the Debtors immediately.

9. Courts agree on the fundamental principle that an action brought pursuant to §542 is an action to recover possession of property belonging to the estate at the time of filing. *See, e.g., Braunstein v. McCabe*, 571 F.3d 108, 122 (1st Cir. 2009) (remarking that § 542 "invokes the court's most basic equitable powers to gather and manage property of the estate"); *Helms v. Roti (In re Roti)*, 271 B.R. 281, 291 (Bankr. N.D. Ill. 2002) (observing that "turnover is intended as the remedy to obtain what is acknowledged to be property of the bankruptcy estate"). In fact, relief under § 542 is most frequently granted against creditors who are in actual or constructive possession of property and who refuse to voluntarily surrender it. *Id.* (citing *Pileckas v. Marcucio*, 156 B.R. 721 (N.D. N.Y. 1993); *In re National Center for Employment of Disabled*, 157 B.R. 291, 294-95 (Bankr. W.D. Tex. 1993)).

10. Courts agree that § 542(b) applies to the recovery of money due to the debtor that is mature and payable on demand. *See In re Charter Company,* 913 F.2d 1575, 1579 (11th Cir. 1990) (stating that "Congress intended to ease reorganization by allow the debtor to obtain funds immediately necessary for survival"); *In re Kids World of America, Inc.*, 349 B.R. 152, 166 (Bankr. W.D. Ky. 2006). In fact, the turnover provisions of § 542 were intended to assist the debtor in immediately obtaining funds due not subject to dispute. *See id.* (citing *In re Archer,* 34 B.R. 28 (Bankr. N.D. Tex. 1983)).

11. Section § 542(b) permits the trustee to recover mature debts. *See, e.g., In re Porter-Hayden Co.,* 304 B.R. 725, 732 (Bankr. Md. 2004). In the same vein, courts emphasize that actions under § 542(b) revolve around the collection of a matured debt. *Id.* (citing *In re Gulf Apparel Corp.*, 140 B.R. 593, 596 (M.D. Ga. 1992)). Courts have held that "matured debt" for purposes of § 542(b) means "debts that are presently payable, as opposed to those that are contingent and become payable only upon the occurrence of a certain act of event." *In re Cambridge Capital, LLC.,* 331 B.R. 47, 57 (Bankr. E.D.N.Y. 2005). The debt owed to the Debtors by the Defendant is mature because it is presently payable. It is in no way contingent. As discussed above, because the Defendant owes a matured debt in the amount of at least $10,078,214.69 to the Debtor Pac-West, § 542(b) mandates that the Defendant immediately pay such sum to the Debtors.

12. Under the doctrine of account stated, a plaintiff must show that the defendant received and retained the plaintiff's invoices, and failed to object to the invoices within a reasonable time, or made a partial payment on the invoices. *See, e.g., Savage & Associates, P.C. v. Level 3 Communications (In re Teligent, Inc.),* 315 B.R. 308, 318 (Bankr. S.D.N.Y. 2004); *see also Champlin Oil & Refining Company v. M.B. Chastain*, 403 S.W.2d 376, 387-88 (Tex. 1966); *Graham v. San Antonio Machine and Supply Corporation*, 418 S.W.2d 303, 312 (Tex. Civ. App.—San Antonio, 1967, writ ref'd n.r.e) (observing that failure to object to the invoices at issue permitted an inference of approval of the invoices sufficient to establish a stated account).

13. For example, in *In re Rockefeller Center Properties and RCP Associates*, No. 00 CIV. 647 (LAP), 2002 WL 22051, (S.D.N.Y. Jan. 8, 2002), the court discussed the doctrine of account stated in the context of summary judgment, noting that whether an invoice has been retained for a sufficient amount of time without objection creates an implied account "becomes a question of law when only one inference is rationally possible." *Id.* at *4. There, the court noted that lengthy time had

elapsed, which supported application of the doctrine of account stated. *Id.* at *5 (citing *Navimex S.A. de C.V. v. S/S Northern Ice*, 617 F. Supp. 103, 106 (S.D.N.Y. 1984) (holding that because five months had elapsed from receipt of the invoices, an account stated resulted after the defendant's failure to object to the invoices)). Under the circumstances in the present case, the Defendant received and retained the Debtors' invoices for a sufficiently lengthy amount of time. The Defendants have wholly failed to object to the invoices within that reasonable time. Accordingly, the Defendant's failure to object to the invoices issued from the Debtor Pac-West nullifies any potential argument or defense with respect to the debt represented by the invoices as well as any issue with respect to setoff, and has thus resulted in an account stated. The Defendant did not object to the invoices and should now accordingly be estopped from contesting their origin or amount.

14. Here, the Defendant owes a matured debt in the amount of at least $10,078,214.69 to the Debtor Pac-West. Such debt stems from intercarrier services that the Debtor Pac-West has provided to the Defendant and represents unpaid intercarrier compensation. Such debt is not contingent or payable upon some future event; it is mature and due and payable immediately. Despite demand, the Defendant has refused to pay such debt. As discussed above, the Debtor Pac-West issued invoices to the Defendant on a reoccurring basis concerning the intercarrier compensation services and amount accordingly due. *See* Ex. A. The Defendant has never objected to the invoices in any way. Accordingly, under the doctrine of account stated as discussed above, the Defendant should now be estopped from contesting the invoices or the amount of debt that the invoices represent as due and owing. The debt of $10,078,214.69 owed to the Debtor Pac-West Telecomm thus is a matured debt, and in line with § 542(b), the Defendant should be ordered to immediately remit the full amount due.

## V. **ATTORNEY'S FEES**

15. The Debtors request an award of their reasonable fees and costs pursuant to Tex. Civ. Prac. & Rem. Code § 38.001 and any other applicable law.

## VI. CONCLUSION

16. Accordingly, the Debtors request that the Court enter judgment against the Defendant as set forth above, and require the Defendant to immediately pay the debt of $10,078,214.69 to the Debtors, and pay Debtors' costs and attorneys' fees.

WHEREFORE, PREMISES CONSIDERED, the Plaintiffs request that judgment be tendered against the Defendant, together with the costs and expenses of this action and the interest that has accrued since the Plaintiffs' first demand for payment of the debt of $10,078,214.69 and that the Plaintiff be granted any and all other relief to which they may show themselves justly entitled.

Dated: July 24, 2013.

        Respectfully submitted,

        JACKSON WALKER L.L.P.
        100 Congress Ave., Suite 1100
        Austin, Texas 78701
        (512) 236-2000
        (512) 236-2002 - FAX

        By: /s/ *Patricia B. Tomasco*
           Patricia B. Tomasco
           State Bar No. 01797600
           (512) 236-2076 – Direct Phone
           (512) 691-4438 – Direct Fax
           Email address: ptomasco@jw.com

           Jennifer F. Wertz
           State Bar No. 24072822
           (512) 236-2247 – Direct Phone
           (512) 391-2147 – Direct Fax
           Email address: jwertz@jw.com

        **COUNSEL FOR PLAINTIFFS**